

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN BISHOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5683 |
| | ) |
| PCS ADMINISTRATION (USA), INC., | ) |
| POTASH CORPORATION OF | ) |
| SASKATCHEWAN, INC., and | ) |
| JOSEPH PODWIKA, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Karen Bishop was formerly employed as an in-house attorney for defendant PCS Administration (U.S.A.), Inc. Also named as a defendant is PCS's parent, Potash Corporation of Saskatchewan, Inc. Additionally, Joseph Podwika, general counsel for both PCS and Potash, is named as a defendant. Plaintiff alleges that she was retaliatorily discharged in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. Defendants have moved to dismiss the Second Amended Complaint.[1]

---

[1] Defendants have also moved for a protective order and/or to quash a subpoena. Because the case is being dismissed, the motion to quash will be granted and the protective order will be denied without prejudice.

The primary issue in this case is whether plaintiff has
adequately alleged that she engaged in activity protected by
§ 1514A and for which she cannot be discharged or otherwise
subjected to retaliation. Section 1514A(a)(1)(C) provides:

> (a) No company with a class of securities
> registered under section 12 of the Securities
> Exchange Act of 1934 (15 U.S.C. 781), or that is
> required to file reports under section 15(d) of
> the Securities Exchange Act of 1934 (15 U.S.C.
> 78o(d)), or any officer, employee, contractor,
> subcontractor, or agent of such company, may
> discharge, demote, suspend, threaten, harass, or
> in any other manner discriminate against an
> employee in the terms and conditions of
> employment because of any lawful act done by the
> employee--

> (1) to provide information, cause
> information to be provided, or otherwise assist
> in an investigation regarding any conduct which
> the employee reasonably believes constitutes a
> violation of section 1341, 1343, 1344, or 1348,
> any rule or regulation of the Securities and
> Exchange Commission, or any provision of Federal
> law relating to fraud against shareholders, when
> the information or assistance is provided to or
> the investigation is conducted by-
> * * *

> (C) a person with supervisory authority over
> the employee (or such other person working for
> the employer who has the authority to
> investigate, discover, or terminate misconduct).

For purposes of the motion to dismiss, it is conceded
that it has been adequately alleged that defendants are covered
by this statute and that plaintiff reported information
to the type of supervisor or authority referred to in
subsection (C). Plaintiff contends the information she

provided falls within the purview of § 1514A(a)(1) because it was
information concerning a purported violation of SEC shareholder
fraud regulations or purported mail fraud or wire fraud in
violation of 18 U.S.C. §§ 1341 & 1343.

As to the elements of plaintiff's § 1514A claim, both
sides rely on four factors set forth in Collins v. Beazer Homes
USA, Inc., 334 F. Supp. 2d 1365 (N.D. Ga. 2004). "[T]he
plaintiff must show by a preponderance of the evidence that
(1) she engaged in protected activity; (2) the employer knew of
the protected activity; (3) she suffered an unfavorable personnel
action; and (4) circumstances exist to suggest that the protected
activity was a contributing factor to the unfavorable action."
Id. at 1375. See also Fraser v. Fiduciary Trust Co.
International, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006) (ruling
on a motion to dismiss and citing Collins for these four
factors). Collins, however, is a ruling on a summary judgment
motion. The cited passage includes an evidentiary standard for
inferring that the protected activity was a contributing factor
in the employer's decision to take an adverse action. A
plaintiff, however, need not plead evidence in the complaint.
See Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002);
Rothman v. City of Chicago, 2003 WL 21148180 *7 (N.D. Ill.
May 16, 2003); Carpanzano v. College of DuPage, 2003 WL 22889432
*3 (N.D. Ill. Dec. 8, 2003); Farrar v. City of Chicago, 291

F. Supp. 2d 747, 752 (N.D. Ill. 2003). It is sufficient to generally allege, even in a conclusory manner, the employer's state of mind. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); Higgs, 286 F.3d at 439; Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998); Triad Associates, Inc. v. Robinson, 10 F.3d 492, 497 (7th Cir. 1993); Remus v. Sheahan, 2006 WL 418654 *6 (N.D. Ill. Feb. 16, 2006). In order to allege her § 1514A claim, it is sufficient for plaintiff to allege (1) the defendants' involvement; (2) that she engaged in a type of protected activity set forth in 18 U.S.C. § 1514A(a)(1); (3) that she suffered an adverse employment action of the type set forth in 18 U.S.C. § 1514A(a), in this case a discharge; and (4) that the adverse employment action was sufficiently motivated by plaintiff's protected activity, that is, that the protected activity was at least a contributing factor in defendants' decision to discharge her, see id. § 1514A(b)(2)(C) (incorporating the burdens of proof contained in 49 U.S.C. § 42121(b)(2)(B)). Cf. Lekas v. Briley, 405 F.3d 602, 614 (7th Cir. 2005); Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005); Rothman, 2003 WL 21148180 at *7; Plohocki v. Chicago School Reform Board of Trustees, 2000 WL 150748 *4-5 (N.D. Ill. Feb. 4, 2000).

Here, plaintiff has alleged that all three defendants are considered to be employers, that she was discharged from employment, and that defendants discharged her because of the activity she engaged in, which she contends is protected activity under § 1514A. The only issue that merits consideration is whether the facts alleged constitute protected activity under § 1514A. Defendants also contend that plaintiff has not alleged their knowledge that she was engaging in the activity at issue. Plaintiff, however, has alleged that her discharge was based, at least in part, on her engaging in that activity.[2]

On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is

---

[2]Defendants contend that judicial notice may be taken of documents that show plaintiff's discharge was not based on the pertinent activity. The documents, however, do not conclusively establish that fact. Plaintiff's allegations that defendants were aware that she contended their conduct constituted violations, see 2d Am. Compl. ¶¶ 47, 49, and that she was discharged for engaging in the purported protected activity, see id. ¶¶ 50-53, must be taken as true.

entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert. denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). Ordinarily, a plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the defendants have at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). Even if not required to plead specific facts, a plaintiff can plead himself or herself out of court by alleging facts showing there is no viable claim. See Slaney v. The International Amateur Athletic Federation, 244 F.3d 580, 597 (7th Cir.), cert. denied, 534 U.S. 828 (2001); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 669-70 n.14 (7th Cir. 1998), cert. denied, 525 U.S. 1114 (1999); Jackson, 66 F.3d at 153-54. Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). To the extent, however, that

- 6 -

fraud is alleged, Fed. R. Civ. P. 9(b) applies, meaning the pertinent allegations must be specific and must be contained in the complaint itself. Kennedy v. Venrock Associates, 348 F.3d 584, 593 (7th Cir. 2003), cert. denied, 541 U.S. 975 (2004); Guaranty Residential Lending, Inc. v. International Mortgage Center, Inc., 305 F. Supp. 2d 846, 852 (N.D. Ill. 2004). While additional allegations contained in a responsive brief are not considered to be incorporated in the complaint, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). When a document may properly be considered, the actual document will override inconsistent descriptions of the document alleged in the body of the complaint. See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988). In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at

951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G.
(Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992); Dodaro v. Village
of Glendale Heights, 2003 WL 1720030 *8 (N.D. Ill. March 31,
2003). A plaintiff is not bound by legal characterizations of
the claims contained in the complaint. Forseth, 199 F.3d at 368;
Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th
Cir. 1999). However, in response to a motion to dismiss that
raises the issue, the plaintiff must identify a legal basis for a
claim and make adequate legal arguments in support of it.
Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co.,
51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d
44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile
Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

The following facts are alleged in the Second Amended
Complaint and taken as true for purposes of ruling on the motion
to dismiss. Plaintiff is an attorney who began working in PCS's
General Counsel office in 2000. Plaintiff's duties included
handling employment matters, drafting responses to administrative
agencies, and drafting and negotiating sales agreements. In the
fall of 2004, defendant Podwika was designated as defendants'[3]
General Counsel effective January 1, 2005. On October 25, 2004,
Podwika and Senior Vice President of Administration Jane Irwin

[3]Plaintiff sometimes refers to "defendants" or
"companies," but also refers to "company." Apparently, however,
plaintiff herself worked for PCS, not directly for Potash.

- 8 -

informed plaintiff that she would become PCS's Compliance Officer. As Compliance Officer she would be responsible for handling all employment-related complaints and for developing and providing compliance training throughout the company. Plaintiff was to draft a job description for her new position.

In the course of creating a job description, plaintiff reviewed an article from the corporate compliance and ethics publication Ethikos. The article indicated a compliance officer should have an employment contract in order to reduce the possibility of being threatened with a reprisal for taking unpopular positions. Plaintiff provided a copy of the article to Podwika and Irwin.

Plaintiff also reviewed Federal Sentencing Guidelines provisions regarding corporate compliance and ethics. Additionally she consulted with outside counsel. Plaintiff interpreted the Sentencing Guidelines as calling for (a) a compliance program approved by the corporation's Board of Directors; (b) high level personnel having ultimate responsibility for the compliance program; (c) adequate resources being devoted to the compliance program; (d) the staff of the compliance program having access to the Board of Directors; and (e) not retaining in authority persons known to have engaged in illegal or unethical conduct. It was the view of plaintiff and outside counsel that adhering to the Sentencing

Guidelines would or could both reduce the possibility of criminal charges in the event of an investigation by prosecutors and reduce penalties in the event of a corporate conviction. It was also the opinion of plaintiff and outside counsel that compliance with the Sentencing Guidelines would meet the Board's fiduciary duties to protect the companies from unnecessary risk.

In late October 2004, plaintiff informed Podwika that the Sentencing Guidelines required that the compliance program be headed by "high level personnel." Plaintiff suggested that Podwika or Irwin be the Compliance Officer and plaintiff would provide the staffing support for the Compliance Officer. On November 13, 2004, Podwika informed plaintiff that neither he nor Irwin would be the Compliance Officer, but a group of managers would share the duties. He also told plaintiff not to obtain an opinion from outside counsel so that there would be no record in case outside counsel's advice was not followed. Plaintiff responded that she would not head up a compliance function that was a sham, that is, one that did not meet the minimum requirements of what she believed to be a valid program. She also informed Podwika that she had already consulted outside counsel.

Later that day, Podwika e-mailed plaintiff. In the e-mail, Podwika stated that he believed the company had an ethical culture and an intention to comply with the overarching

aims of the Sentencing Guidelines, which he believed to be
flexible. He stated his opinion that a compliance officer
position is not essential to being consistent with the Sentencing
Guidelines.

> Finally, you are operating under a profound
> misapprehension about the job which Jane and I
> outlined to you. Specifically, the position is
> intended to be complimentary to the compliance
> function; it is in no way intended to constitute
> the compliance function.
> Please desist from any further efforts to
> develop recommendations for the company's
> compliance program until we get a chance to
> discuss this next Friday. Both Jane and I want
> to meet with you first thing Friday morning.

On November 16, 2004, plaintiff sent Podwika and Irwin
two documents. One was outside counsel's analysis of the
compliance function. The other was a draft description of the
senior managers compliance committee suggested by Podwika,
including a job description for plaintiff that included both
staffing the compliance committee and employment law duties.

On November 19, 2004, plaintiff met with Podwika and
Irwin. They told plaintiff that there would be no formal
compliance committee; plaintiff would be the Compliance Officer,
but she would not be promoted to a higher-level position; that
they had not informed the Board of plaintiff's proposal; and that
the compliance function would develop from the ground up, rather
than coming down from management. Plaintiff expressed her
opinion that this proposal was not consistent with the Sentencing

Guidelines, but Podwika continued to disagree, emphasizing that the Sentencing Guidelines are flexible.

Plaintiff still believed that Podwika's position was inappropriate and that the concerns needed to be brought to the attention of the Audit Committee of PCS's Board. On November 20, 2004,[4] plaintiff sent a letter to Jack Vicq, Chair of the Audit Committee. In the first paragraph of that letter, plaintiff raised concerns regarding violations of the Equal Pay Act and age discrimination laws. In the second paragraph, plaintiff stated:

> Secondly, actions in process regarding the development of a compliance program raise the potential that PCS and its shareholders may be put at risk in the development of this function. In my several, extended, discussions with Mr. Podwika and Ms. Irwin, the role of the responsible body (the Board) in assessing costs and risks and approving a program structure remains unclear. My concern here, expressed to both of these officers, is that the proposed program (my providing part-time staff assistance to an unidentified group of Vice Presidents) will not meet the "sentencing guidelines" under US law and practice, thus likely eliminating or severely limiting a "good faith" defense for potential penalties in the event PCS faces legal violations. PCS' existing violations enhance the risk to shareholders, the Board members, and Officers should a future violation occur.

---

[4]Neither the November 20 2004 letter nor the December 2, 2004 memorandum discussed below are expressly quoted in the Second Amended Complaint, nor attached as an exhibit. Both, however, are referred to in the Second Amended Complaint. In response to the motion to dismiss, plaintiff implicitly concedes that both documents may be considered because central to her claims and plaintiff herself relies on the documents in responding to the motion to dismiss.

- 12 -

On December 2, 2004, plaintiff sent a memorandum to Vicq

to which she attached outside counsel's analysis. Plaintiff

stated that there was a choice between the "Lower Cost, Higher

Risk" Option 1 proposed by Podwika and the "Higher Cost, Lower

Risk" Option 2 suggested by her.

> Summary: Since PCS currently is on
> probation for violation of environmental law, any
> future transgression (advertent or inadvertent)
> would seem to create additional risks to PCS and
> the Board. Since Option 1 appears to fail to
> meet the standards of the Sentencing guidelines,
> any such transgression can be expected to fail to
> receive favorable treatment, exposing both PCS
> and the Board to the full weight of the law and
> both civil and criminal sanctions.
> My goal in raising this issue is to ensure
> that the Board has the opportunity to make an
> informed decision, since the Board bears the full
> responsibility for the results of that choice.
> This issue is raised to you to offer the Board a
> full and candid basis on which to make such a
> decision. Of course, once the Board has made its
> decision, I will be pleased and honored to use my
> talents and experience to ensure that decision is
> faithfully implemented.

Vicq retained an outside lawyer, Douglas Chalmers, to

interview plaintiff. Chalmers's investigation, however, was

limited to issues other than the compliance function, apparently

the Equal Pay and age discrimination issues also mentioned in

plaintiff's November 20 letter. On December 18, 2004, Vicq sent

plaintiff a letter summarily rejecting the other allegations.

Vicq's letter did not mention the compliance issues.

On December 21, 2004, Podwika discharged plaintiff. The stated reasons were: (a) plaintiff had not familiarized herself with antitrust laws and the Uniform Commercial Code; (b) in negotiating a sales agreement six months earlier, plaintiff had angered the purchasing agent of a customer; (c) five months earlier, plaintiff had inappropriately discussed an employment investigation with a Human Resources employee in Canada; and (d) plaintiff had failed to follow Podwika's directions regarding the compliance program. Additional reasons were raised in OSHA administrative proceedings that were a necessary prerequisite to the present lawsuit. As alleged in the Second Amended Complaint, however, it is taken as true that the real reason for the discharge was the positions plaintiff had advocated regarding the compliance program.

An employee can engage in § 1514A protected activity even if the reported conduct did not actually constitute a violation of one of the laws or regulations enumerated in § 1514A(a)(1). It is sufficient that the employee "reasonably believes" the conduct constituted such a violation. 18 U.S.C. § 1514A(a)(1); Collins, 334 F. Supp. 2d at 1376. This reasonableness test "is intended to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts. . . . The threshold is intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that

- 14 -

reporting is otherwise, absent specific evidence." Id. (quoting
Legislative History of Title VIII of HR 3763: The Sarbanes-Oxley
Act of 2002, Cong. Rec. S7418, S7420 (daily ed. July 26, 2002),
reprinted at 2002 WL 32054527). The reasonable belief must be
both subjectively believed and objectively reasonable.
Melendez v. Exxon Chemicals Americas, ARB No. 96-051 at 20
(Dept. of Labor, A.R.B. July 14, 2000);[5] Lerbs v. Buca Di Beppo,
Inc., 2004-SOX-8, 2004 WL 3717162 *10 (Dept. of Labor, A.L.J.
June 15, 2004). Cf. Hamner v. St. Vincent Hospital & Health Care
Center, Inc., 224 F.3d 701, 706-07 (7th Cir. 2000) (Title VII
retaliation); Howell v. North Central College, 331 F. Supp. 2d
660, 663 (N.D. Ill. 2004) (Title IX retaliation). The employee's
access to information, experience, and background are
considerations in determining whether he or she had a reasonable
belief. Kalkunte v. DVI Financial Services, Inc., 2004-SOX-56,
2005 WL 2822926 *40-41 (Dept. of Labor, A.L.J. July 18, 2005);
Jayaraj v. Pro-Pharmaceuticals, Inc., 2003-SOX-32, 2005 WL
1061667 *17 (Dept. of Labor, A.L.J. Feb. 11, 2005).

Defendants contend plaintiff was not engaging in
protected activity because she was not reporting conduct that she
perceived to be a violation of any of the laws or regulations

---

[5]Administrative decisions of both the Administrative
Review Board and Administrative Law Judges can be found at the
website for the Department of Labor's Office of Administrative
Law Judges, www.oalj.dol.gov.

enumerated in § 1514A, but simply reporting that the structures being proposed would not be sufficient to prevent or reduce the impact of potential future violations. Plaintiff contends that "raising the specter of potential fraud" constitutes protected activity. Pl. Answer Br. at 11. She also contends that "creating a sham compliance program would perpetrate a fraud against shareholders" and that defendants necessarily would have used the mails and wires to set up the compliance program so that there would be a violation of the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343, which are two of the statutory violations included in § 1514A(a)(1). Pl. Answer Br. at 10.

Plaintiff cites two administrative decisions[6] purportedly supporting her contention that § 1514A protected activity includes proposed programs to prevent future violations. She quotes the highlighted portion of the following excerpt from an administrative decision.

> I find no basis in the Act for concluding
> that the manipulation a whistleblower identifies
> as inappropriate must actually appear in an

[6]Before bringing a § 1514A claim in court, the plaintiff must first file a complaint with the Secretary of Labor. See 18 U.S.C. § 1514A(b)(1). Since § 1514A did not go into effect until 2002, there are still few court decisions addressing its provisions. There are, however, a substantial number of administrative decisions and both parties cite to such decisions. The administrative decisions are not binding on this court, but may be looked to for guidance. See Collins, 334 F. Supp. 2d at 1374 n.10.

external report or statement before the Act's
protections are triggered. The value of the
whistleblower resides in his or her insider
status. These employees often find themselves
uniquely positioned to head off the type of
"manipulations" that have a tendency or capacity
to deceive or defraud the public. By blowing the
whistle, they may anticipate the deception buried
in a draft report or internal document, which
if not corrected, could eventually taint the
public disclosure. Beyond that, their reasonable
concerns <u>may, for example, address the inadequacy</u>
<u>of internal controls promulgated in compliance</u>
<u>with Sarbanes-Oxley mandates or SEC rules</u>
<u>that impact on procedures through out the</u>
<u>organization, or the application of accounting</u>
<u>principles, or the exposure of incipient problems</u>
<u>which, if left unattended, could mature into</u>
<u>violations of rules or regulations of the type an</u>
<u>audit committee would hope to forestall.</u>
      Thus, whistleblower protection extends not
only to criminal violations involving securities,
bank, and postal fraud situations, but violations
of any SEC rule or any federal law broadly
"relating to fraud against stockholders."
Section 1514A(a)(1). The latter provision may
provide ample latitude to include rules governing
the application of accounting principles and the
adequacy of internal accounting controls
implemented by the publicly traded company in
compliance with such rules and regulations.

<u>Morefield v. Exelon Services, Inc.</u>, 2004-SOX-2, 2004 WL 3567255

*5-6 (Dept. of Labor, A.L.J. Jan. 28, 2004).

      <u>Morefield</u> concerns an employee who complained that

financial results were being manipulated and also that internal

accounting controls were both being violated and were inadequate

to prevent the attempted manipulations, but the complained of

transgressions were rectified before any misinformation was

publicly reported or otherwise did not result in any

misinformation being reported to shareholders. The ALJ held that this constituted protected activity even though the fraud was never actually perpetrated on shareholders. In other words, an employee's activity was not unprotected because his whistleblowing was successful in stopping the fraud before it was perpetrated on shareholders. In Morefield, the protected activity concerned existing control procedures for accurate reporting and actual violations of those procedures. That is unlike Bishop's activity, which involved legal disagreements over how to establish procedures for preventing and discovering violations of proper accounting procedures or preventing and discovering other fraudulent conduct.

Plaintiff also cites Getman v. Southwest Securities, Inc., 2003-SOX-8 (Dept. of Labor, A.L.J. Feb. 2, 2004) ("Getman I"), in which it was found that a stock analyst for a broker-dealer/investment adviser engaged in protected activity when she refused to raise a stock rating under pressure from her employer's Review Committee and that this activity was a contributing factor in her subsequent discharge. See id. at 17, 22, 26. Plaintiff contends this ruling supports that an actual violation need not occur because Getman did not actually change her stock rating. Plaintiff ignores that Getman I was overturned by the Administrative Review Board ("A.R.B."). See Getman v. Southwest Securities, Inc., ARB Case No. 04-059, 2005 WL 1827748

(Dept. of Labor, A.R.B. July 29, 2005) ("Getman II"). The A.R.B. held that the refusal to change a rating did not, by itself, constitute protected activity. Getman II, 2005 WL 1827748 at *6-7. The A.R.B. did indicate (in dictum) that an actual violation was not necessarily required for protected activity as long as the employee "reasonably believed [the corporation] was about to commit fraud against shareholders or some other securities violation." Id. at *6 (emphasis added). The holding of the A.R.B, however, was based on a distinction between refusing to participate in a fraud and providing information that fraud is being perpetrated or is about to occur.

> . . . In our view, her unspecified "refusal"
> was not sufficient to "provide information" to a
> person with supervisory authority relating to a
> violation. In the context of a review committee
> meeting between an analyst and her supervisor,
> where disagreement over a rating may be a normal
> part of the process, the analyst must communicate
> a concern that the employer's conduct constitutes
> a violation in order to have whistleblower
> protection. While there may be times where only
> refusal is sufficient to provide information,
> reviewing Getman's evidence in the light most
> favorable to her, it was not in this case.
> In drafting whistleblower protection laws,
> Congress, after all, has drawn the distinction
> between notifying the employer of a violation
> and refusing to commit a violation. See, e.g.,
> Energy Reorganization Act (ERA), 42 U.S.C.A.
> § 5851(a)(1)(A), (B) (West 2003) (extending
> coverage to an employee who "notified" his
> employer of an alleged violation or "refused"
> to engage in an unlawful practice if the employee
> has "identified the alleged illegality to the
> employer"); Surface Transportation Assistance
> Act (STAA), 49 U.S.C.A. § 31105(a)(1) (West 1997)
> (providing protection for an employee who files a

"complaint" related to a motor vehicle safety
regulation or "refuses to operate" a vehicle
because it would violate a safety regulation or
the employee reasonably believes the vehicle is
unsafe). If Congress had wanted to protect a
refusal as distinct from providing information,
it could have done so in drafting the SOX. We
therefore conclude that Getman's unexplained
refusal to change her recommended rating of the
Cholestech stock was not protected activity.

Getman II, 2005 WL 1827748 at *6-7.

The decisions cited by plaintiff do support that
protected activity can occur without there also being an actual
violation of the pertinent securities laws or regulations.
However, those holdings are qualified. In the first decision,
misstated financials were already in a preliminary form and did
not ripen into actual violations because of the plaintiff's
whistleblowing activity. In the second decision, dictum supports
that the violation need not have actually occurred, but must have
at least reached the stage of being about to be committed.

Defendants cite administrative decisions to support their
view. In Marshall v. Northrup Gruman Synoptics, 2005-SOX-8
(Dept. of Labor, A.L.J. June 23, 2005), the ALJ held that
protected activity could not be based on complaints about
internal controls being inconsistent with general accounting
principals or financial records for the internal use of a
department being incorrect when those claimed errors did not
affect any public report or other document that could be the

basis of actual fraud on shareholders. While not controlling Bishop's situation, this decision supports requiring that there be a relationship to an actual violation of one of the laws or regulations enumerated in § 1514A(a)(1).

The plain language of § 1514A(a)(1) refers to providing information that is reasonably believed to "constitute[ ] a violation" of one of the enumerated statutes or regulations. The word "constitute" should be understood to mean an actual violation has occurred, which could include an attempt (in the criminal sense).[7] To the extent there is a reasonable (but incorrect) belief, it must be a reasonable belief that an actual violation has occurred or is being attempted. A reasonable belief that implementing certain procedures will be insufficient to prevent violations is not, by itself, a reasonable belief that a violation has occurred or been attempted. Plaintiff must rely on something more than just complaints that the compliance program itself was legally deficient so that the potential and risk of violations or penalties was present.

Even taking as true that, at the time she raised her complaints, plaintiff subjectively believed that the deficient

---

[7]Attempt under criminal law means the defendant knowingly took a substantial step toward the commission of the offense with the specific intent to commit that offense. United States v. Fiedeke, 384 F.3d 407, 411-12 (7th Cir. 2004), cert. denied, 543 U.S. 1079 (2005). The conduct discussed in Morefield and Getman would appear to be conduct that would constitute attempts.

compliance program constituted an actual violation of one of the
pertinent statutes or regulations, that belief must also be
objectively reasonable. If the law itself does not establish
that a deficient compliance program is a violation of the
pertinent statutes or regulations concerning fraud, then the
subjective belief of plaintiff (an attorney practicing before the
SEC) was not objectively reasonable. In her answer brief,
plaintiff makes reference to mail and wire fraud and also cites a
regulation (17 C.F.R. § 205.2) requiring attorneys to report
perceived violations of securities laws and breaches of fiduciary
duty to the chief legal counsel or audit committee. Although
citing these provisions, plaintiff repeatedly returns to her
contention that the deficient program put the company at risk of
liability for future violations. See Pl. Answer Br. at 7-12.
Plaintiff's only contention that there was a presently occurring
violation is the following conclusory assertion: "In addition,
Bishop did not merely state concerns about 'potential' or future
fraud. Bishop's main concern was Defendants' failure to create
an adequate compliance program while representing to shareholders
that it had mitigated risks. The failure to create an adequate
compliance program had already happened, and Bishop therefore
expressed concerns about events that had occurred or were
occurring." Id. at 11.

Plaintiff does not support her conclusory contentions with an explanation of how exactly the compliance program with which she disagreed violated § 1341, § 1343, or an SEC regulation related to fraud. Objectively, however, there is nothing in the Sarbanes-Oxley Act or in the Sentencing Guidelines that mandates ex ante any particular form of corporate compliance program. Failure to adopt the provisions of the Sentencing Guidelines compliance program could not objectively be regarded as fraudulent within the meaning of Section 1514A. Nor could non-compliance with a state law fiduciary requirement recommending or requiring a Sentencing Guidelines compliance program be regarded as fraudulent conduct within the meaning of the Act.

All the statutes and regulations referenced in § 1514A(a)(1) are ones setting forth fraud. The phrase "relating to fraud against shareholders" in this provision must be read as modifying each item in the series, including "rule or regulation of the Securities and Exchange Commission." See Fraser, 417 F. Supp. 2d at 322-24; Flake v. New World Pasta Co., ARB No. 03-126, 2004 WL 384738 *1 (Dept. of Labor, A.R.B. February 25, 2004); Lerbs, 2004 WL 3717162 at *10, 12; Morefield, 2004 WL 3567255 at *6. Although other aspects of the retaliation claim need not be pleaded with particularity, Rule 9(b) does require that the fraud violation itself be pleaded with particularity. The Second Amended Complaint itself does not specifically plead

any fraud violation nor does plaintiff's brief specifically identify any of the purported false representations to shareholders that risks were being adequately mitigated. Additionally, plaintiff makes no legal argument explaining the particular statute or regulation that is being violated.

Since plaintiff has not pleaded any facts that would objectively support a belief that fraud had occurred, the allegations do not support that she was engaging in protected activity. Therefore, plaintiff's cause of action will be dismissed.

IT IS THEREFORE ORDERED that defendants' motion to dismiss [16] is granted. Defendants' motion to quash [37] is granted. Defendants' motion for a protective order [37] is denied without prejudice as moot. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: MAY 23, 2006